Wilburn McMICHAEL, Appellant,

v.

AMERICAN RED CROSS, Appellee.

Court of Appeals of Kentucky.

Dec. 12, 1975.

Joe G. Leibson, Louisville, for appellant.

Lively M. Wilson, Stites, McElwain & Fowler, Louisville, for appellee.

CULLEN, Commissioner.

This is an appeal from a judgment of the Jefferson Circuit Court dismissing the complaint of the plaintiff, Wilburn McMichael, in accordance with a directed verdict granted for the defendant, American Red Cross. The essential facts were stipulated by the parties. While hospitalized for severe burns at St. Anthony's Hospital, McMichael received whole blood and plasma from five different donors who had been screened by the best available manner by the American Red Cross, which furnished the blood in a sterile condition to the hospital for a service charge of $9.95 per unit. Forty-seven days later, which is within the normal incubation period, McMichael was diagnosed as having serum hepatitis.

McMichael brought the action to recover for the damages he suffered due to his encounter with this illness based on alternative theories of breach of implied warranty of merchantability and fitness under the Uniform Commercial Code, KRS 355.2–314 and 355.2–315, and of strict liability in tort as set out in section 402A of the American Law Institute's Restatement of Torts 2nd. Although he argues on this appeal that he also made a claim of ordinary negligence, the record shows that negligence was not pleaded.

In his opening statement counsel for McMichael stated the stipulated facts and in addition stated that he would have witnesses to prove causation. At the conclusion of the opening statement the court directed a verdict in favor of the defendant, relying upon KRS 139.125 which states "the procurement, processing, distribution or use of whole blood, plasma, blood products, blood derivatives and other human tissues . . . is declared not to be a sale . ." The court held that a sale is essential to a cause of action under strict liability or under an implied warranty, and under the broad public policy expressed in the statute the Red Cross cannot be held liable in this sort of situation.

McMichael contends on this appeal that KRS 139.125 is not applicable to the present controversy due to the fact that it is com-

piled in the chapter of the statutes relating to sales and use taxes and therefore applies only to tax liabilities. Failing that contention, McMichael argues that the statute is unconstitutional under *Saylor v. Hall*, Ky., 497 S.W.2d 218 (1973).

We do not find it necessary to discuss the applicability or constitutionality of the statute, or the questions of whether, without regard to the statute, the transfer of donor blood by Red Cross to a hospital for a service fee is a *sale* under the Uniform Commercial Code, KRS 355.2–314 and 355.-2–315, so as to give rise to an implied warranty, and whether Red Cross is a *seller* under Section 402A of the Restatement of Torts 2nd so as to be subject to strict tort liability. Our conclusion is that even if the statute be inapplicable or unconstitutional, and even if the transfer be deemed a sale and Red Cross a seller, the directed verdict in the instant case was proper because under the stipulated facts there were no methods available at the time in question by which hepatitis virus could effectively be excluded from blood or the presence of the virus determined. Therefore, the blood involved in the instant case, to the extent it may have contained hepatitis virus, was unavoidably unsafe as discussed in Comment (k) under Section 402A of the Restatement and for that reason it was not unreasonably dangerous within the terms of Section 402A and it did not fail to be fit within the terms of the warranties provided for in the Uniform Commercial Code, KRS 355.2–314 and 355.2–315.

Comment (k) under Section 402A reads: "*Unavoidably unsafe products.* There are some products which in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. An outstanding example is the vaccine for the Pasteur treatment of rabies, which not uncommonly leads to very serious and damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use of the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician. It is also true in particular of many new or experimental drugs as to which, because of the lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk."

Hereinafter noted are decisions from other jurisdictions on the question of unavoidable unsafeness under Comment (k), with their reasoning.

In *Jackson v. Muhlenberg Hospital*, 96 N.J.Super. 314, 232 A.2d 879 (1967), the court said:

"One underlying assumption in most if not all strict products liability cases is that the producer or an employee must have made a mistake in either the design, production or inspection of the product, or it would not have been defective and dangerous. In effect the courts have taken judicial notice of this and have relieved the injured party of the impossible burden of proving where the mistake occurred. Certainly a painstaking effort

to avoid a defect does not excuse and should not excuse the error of oversight which has actually occurred. Where, as here, the harmful agent may be present without any error or oversight, the conclusive presumption of fault on the part of the producer is inapplicable. The producer is in no position to know or control the condition and there is no implied representation that the blood is free of the virus. * * * This, then, is a highly useful and desirable product attended with a known but reasonable risk. The marketing and use are justified. The blood is not defective or *unreasonably* dangerous."

That court later (53 N.J. 138, 249 A.2d 65 (1969) reversed its position somewhat due to the "wholly inadequate record" before it. The court did not reverse on the merits, however, but merely requested that a "detailed testimony as to the nature of the defendants' operations" be made along with expert testimony as to any tests to ascertain the presence of the hepatitis virus in the blood, relevant economic factors, and respective incidences of hepatitis in commercial and noncommercial blood.

*Brody v. Overlook Hospital*, 127 N.J.Super. 331, 317 A.2d 392 (1974), which reversed that court's earlier decision in a case by the same name, concluded that blood should be considered "unavoidably unsafe" and thus not "unreasonably dangerous" or a proper subject for the doctrine of strict liability. The court opined that the view of Comment (k) in *Cunningham* (hereinafter mentioned) was far too narrow in limiting the applicable items to those that are "not impure". The court further distinguished *Russell* (also hereinafter mentioned) because the majority opinion did not refer to 402A, it being discussed only in the concurring opinion by Justice Roberts.

Although decided essentially due to a statute recently enacted in that state, the court in *Hines v. St. Joseph's Hosp.*, 86 N.M. 763, 527 P.2d 1075 (1974), severely criticized *Cunningham* in reference to its rationale dealing with Comment (k). After quoting

that portion of the comment dealing with new or experimental drugs which states in part that "there can be no assurance of safety, or perhaps even of *purity* of ingredients," the court said

"Although blood cannot be considered a 'new or experimental' drug it is new in the sense that no adequate test had been devised to detect the hepatitis virus and even if detected, there is no process to destroy it without damage to the blood. More importantly the *Cunningham* court, by categorically limiting the applicability of the exception to 'pure' products stultified the flexible policy behind the exception. Instead of balancing the dangers of a particular product against its benefits, *Cunningham* would categorize a large segment of products as vulnerable to strict liability without regard to social benefits."

A contrary view had been taken by Justice Roberts in his concurring opinion in *Community Blood Bank v. Russell*, Fla., 196 So.2d 115 (1967). In regard to Comment (k) Justice Roberts stated:

". . . the seller of a product intended for human consumption is liable for injurious consequences resulting from the consumption of a defective or adulterated product, even though it was at the time of the sale and consumption of such product practically or scientifically impossible to discover the defect in or adulteration of such product.

\*   \*   \*   \*   \*   \*

"There is a clear distinction between a product which is not adulterated—one which meets all the standards established for a particular product but which is attended with a known risk to the consumer—and a product which is, in fact, adulterated and defective—that is, which does not meet the standards established for this particular product—and which would, because of such unknown and undetectable defect, produce a harmful effect upon *any* consumer thereof."

*Cunningham v. MacNeal Memorial Hospital*, 47 Ill.2d 443, 266 N.E.2d 897 (1970), decided to follow the view of Justice Roberts. After citing extensively from the *Russell* concurring opinion the court stated

"To allow a defense to strict liability on the ground that there is no way, either practical or theoretical, for a defendant to ascertain the existence of impurities in his product would be to emasculate the doctrine and in a very real sense would signal a return to a negligence theory. * * * If the article left the defendant's control in a dangerously unsafe condition, the defendant is liable whether or not he was at fault in creating that condition or in failing to discover and eliminate it."

The court continued in the same vein by pointing out that the Comment (k) exception applied only to "pure" items or, in the words of the court, "not impure and which, even if properly prepared, inherently involve substantial risk of injury to the user."

The Colorado court in *Schmaltz v. St. Luke's Hospital*, Colo.App., 521 P.2d 787 (1974), after acknowledging that there exist certain products that present a justifiable risk, concluded that Comment (k) should be construed strictly and blood should not be included among the exceptions.

After weighing the merits of the conflicting views above noted we have concluded that under the stipulated facts of the instant case the blood in question, in respect to the presence of hepatitis virus, was unavoidably unsafe and thus was not unreasonably dangerous nor unfit.

We recognize that the concept of unavoidable unsafeness was developed only as an exception to strict tort liability under Section 402A as an interpretation of the term "unreasonably dangerous" as used in that section, and has not in terms been utilized by any court as a basis for an exception to liability under the implied warranty of fitness provided for in the Uniform Commercial Code. Nevertheless, we view strict liability under Section 402A and implied-warranty liability under the Uniform Commercial Code as being expressions of a single basic public policy as to liability for defective products. If the policy as to Section 402A is that unavoidable unsafeness of the character involved in the blood in the instant case is a basis for denying strict liability, it would seem that the same policy should prevail with respect to liability under implied warranty.

Prosser, in The Law of Torts (4th ed. 1971), sec. 99, pages 658 to 662, in discussing strict liability as to unsafe products, treats the policy considerations as being the same "whether on warranty or in tort," and he says that in either case there must "be something wrong with the product which makes it unreasonably dangerous to those who come in contact with it." Further, that the prevailing interpretation of "defective" is that "the product does not meet the reasonable expectations of the ordinary consumer as to its safety," which "amounts to saying that if the seller knew of the condition he would be negligent in marketing the product." He questions whether there should be liability on the seller under any theory, with respect to products that are unavoidably unsafe, such as the vaccine for the Pasteur treatment for rabies, and he refers without criticism to the cases which have held that blood containing hepatitis virus is unavoidably unsafe.

In *Balkowitsch v. Minneapolis War Memorial Blood Bank, Inc.*, 270 Minn. 151, 132 N.W.2d 805 at 811 (1965), the court said:

" * * * Moreover, it seems to us that under the facts in the case before us it would be unrealistic to hold that there is an implied warranty as to qualities of fitness of human blood on which no medical or scientific information can be acquired and in respect to which plaintiff's physician has the same information, knowledge, and experience."

We refer again to *Jackson v. Muhlenberg Hospital*, 96 N.J.Super. 314, 232 A.2d 879 (1967), its expression of the view that the concept of strict liability, whether in tort or

on implied warranty, rests in substantial part on the theory of the existence of an *implied representation* by the seller that the product is safe, and its holding that in the case of blood containing hepatitis virus, where the producer could not know or control the condition, "there is no implied representation that the blood is free of the virus."

Our ultimate conclusion is that the trial court properly directed a verdict for Red Cross, but for the reasons herein stated rather than the reasons relied on by the trial court.

The judgment is affirmed.

All concur.