Stella M. McKEE, Individually & as Administratrix of the Estate of David Allen McKee, Plaintiff,

v.

MILES LABORATORIES, INC. and Cutter Laboratories, Inc., Defendants.

Civ. A. Nos. 85–57, 86–248.

United States District Court, E.D. Kentucky, London Division.

Dec. 22, 1987.

John Mclorey and Larry Sword, Somerset, Ky., for plaintiff.

Duncan Barr, San Francisco, Cal., and James Ridings, London, Ky., for defendants.

## MEMORANDUM

SILER, Chief Judge.

This matter is before the Court on the motion by defendant Miles Laboratories, Inc. and its division, Cutter Laboratories, for summary judgment. Armour Pharmaceutical Company, Travenol Laboratories, Inc. and Alpha Therapeutic Corporation have been dismissed pursuant to an agreed Order of June 9, 1987.

This action arose from the circumstances surrounding the blood transfusion of plaintiff's decedent, David Allen McKee. David McKee suffered from Hemophilia A, which meant he lacked a protein necessary for the normal coagulation of his blood. That missing protein is called Factor VIII. A method used by pharmaceutical companies for the treatment of hemophiliacs involved producing Factor VIII by combining (or pooling) plasma collected from thousands of individuals all over the United States. The Factor VIII is precipitated out of the combined plasma and then it is lyophilized (or freeze dried). David McKee used defendant's concentrated Factor VIII Product by the pooled lyophilized method. As a result of its use he contracted acquired immune deficiency syndrome ("AIDS"). Decedent was so diagnosed as having AIDS in October 1983 and subsequently died in 1984. His Administratrix and wife, Stella Mae McKee, brought this action for damages as representative of his estate and on her own behalf.

Defendants move for summary judgment as to plaintiff's strict liability claims, contending that these claims are barred by Kentucky's Blood Shield statute, K.R.S. 139.125. Defendants also move for summary judgment as to the merits of the case, contending that at the time plaintiff's decedent contracted AIDS there was no test which would have revealed the presence of this dreaded disease. In opposition to the motion for summary judgment, plaintiff argues that there is a genuine issue of material fact as to whether an alternative testing method was available in 1983 when decedent contracted AIDS. Plaintiff also asserts that Kentucky's blood shield statute did not bar product liability claims and that, in any event, the statute is not applicable to this situation, but, if applicable, then unconstitutional.

The two central issues before the Court are: (1) whether strict liability applies to defendant's conduct; and (2) whether there existed, at the time plaintiff's decedent contracted the disease, a plausible alternative testing for determining the AIDS virus.

Rule 56(c) of the Federal Rules of Civil Procedure provides that after an adequate opportunity for discovery, *see Celotex Corp. v. Catrett*, 477 U.S. 317, ——, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986), and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, —— n. 5, 106 S.Ct. 2505, 2511 n. 5, 91 L.Ed.2d 202, 213 n. 5 (1986), the moving party shall be granted summary judgment when it appears that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the [record]' which it

believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at ——, 106 S.Ct. at 2553, 91 L.Ed.2d at 274. However, there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* (emphasis in original).

Once a properly supported motion for summary judgment is made, "the nonmovant must go beyond the pleadings and by affidavits or by 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.' " *Potters Medical Center v. City Hospital Association,* 800 F.2d 568, 572 (6th Cir.1986) [quoting Rule 56(c), (e), FED.R.CIV.P.]. *See also Anderson,* 477 U.S. at ——, 106 S.Ct. at 2509–11, 91 L.Ed.2d at 211–213.

The standard for granting summary judgment is identical to the standard for a directed verdict under FED.R.CIV.P. 50(a), "which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.... If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." *Anderson,* 477 U.S. at ——, 106 S.Ct. at 2511, 91 L.Ed.2d at 213. "The evidence must be viewed in a light most favorable to the party opposing summary judgment and that party must be given the benefit of all reasonable inferences." *Potters,* 800 F.2d at 572. *See also Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538, 553 (1986), and *Bouldis v. United States Suzuki Motor Corp.,* 711 F.2d 1319, 1324 (6th Cir.1983).

The relevant statute in question provides:

Procurement, processing or distribution of blood or human tissue deemed service and not sale. The procurement, processing, distribution or use of whole blood, plasma, blood products, blood derivatives and other human tissues such as corneas, bones or organs for the purpose of injecting, transfusing or transplanting any of them into the human body is declared to be, for all purposes, the rendition of a service by every person participating therein and, whether or not any remuneration is paid therefor, is declared not to be a sale of such whole blood, plasma, blood products, blood derivatives or other tissues, for any purpose, subsequent to enactment of this section.

K.R.S. 139.125.

Only one Kentucky case has been found discussing this statute. In *McMichael v. American Red Cross,* 532 S.W.2d 7 (Ky. 1975), the Court of Appeals (then Kentucky's highest Court) declined to address the applicability or constitutionality of K.R.S. 139.125. The case involved a plaintiff encountering serum hepatitis from a blood transfusion. Rather than discussing the above two issues, the Kentucky Court sustained the lower court's directed verdict on the basis that "there were no alternative methods available at the time by which hepatitis virus could effectively be excluded from blood or the presence of the virus determined." *Id.* at 9. However, the trial court granted a directed verdict in favor of the defendant, the blood supplier, relying upon K.R.S. 139.125. Although this Court sought certification as to the issues of strict liability and constitutionality of the above statute, the Supreme Court of Kentucky declined the request, relying upon its holding in *McMichael, supra.*

▆ There is nothing within the provisions of Kentucky's Constitution which would make K.R.S. 139.125 contrary to the framers' intent. Under Kentucky rules of statutory construction, the reviewing court is to be guided by the language, purpose and legislative history of the statute in question. *McBarron v. S & T Industries,* 771 F.2d 94 (6th Cir.1985); *Stevens v. United States,* 440 F.2d 144 (6th Cir.1971); *Northwestern Nat'l Ins. Co. v. Osborne,* 610 F.Supp. 126 (E.D.Ky.1985); *Hall v. Union, Light, Heat & Power Co.,* 53 F.Supp. 817 (E.D.Ky.1944); *George v. Alcoholic Beverage Control Bd.,* 421 S.W.2d 569 (Ky. 1967); *Kavanaugh v. Daniels,* 549 S.W.2d 526 (Ky.App.1977). However, the legislative history need not be referred to in con-

struing a statute where the statutory language is clear. *Ex parte Collett*, 337 U.S. 55, 69 S.Ct. 944, 93 L.Ed. 1207 (1949).

The Court is guided as well by defendants' authority under *Coffee v. Cutter Biological and Miles Laboratories, Inc.*, 809 F.2d 191 (2d Cir.1987). In that case the Court analyzed a blood shield statute similar to Kentucky's blood shield statute. Based upon the analysis of that opinion and the plain language of the statute, this Court concludes that Kentucky's blood shield statute was intended to preclude the assertion of product liability claims arising out the sale of blood components. The plain and unambiguous words of the statute clearly state that supplying blood or blood derivatives is to be considered a service by every person participating therein. Only four jurisdictions in the nation have not legislatively barred the application of products liability theories to blood and blood products. Kentucky is not listed as one of those four states. *See* Greif, *Hospital and Blood Bank Liability to Patients Who Contract Aids Throught Blood Transfusions*, 23 San Diego L.Rev. 875, 882 n. 36 (July–Aug.1986) (listing Kentucky as having enacted such a statute); *Kozup v. Georgetown University*, 663 F.Supp. 1048 (D.D.C.1987). Because transactions involving blood and blood components are to be considered services, as opposed to sales, they are outside the purview of Kentucky's product liability statute. K.R.S. 411.300; 411.320; 411.340; *McMichael, supra.*

As was noted in *Coffee*, blood shield statutes in other states uniformly have been interpreted as barring strict liability claims. To permit the plaintiff to circumvent the exemption of blood and blood derivatives by pursuing claims under the product liability statute would defeat the obvious legislative intent of K.R.S. 139.125. Consequently, plaintiff's claims against defendants arising under strict liability should be dismissed.

The Court now turns its attention to the second issue, that is, whether at the time plaintiff's decedent contracted the AIDS virus a plausible alternative testing method existed to detect its presence within the blood derivatives. In reaching this answer, the Court is guided by the well-reasoned decision in *Kozup v. Georgetown University*, 663 F.Supp. 1048 (D.D.C.1987), which analyzed existing methods available for the testing of AIDS during the early 1980s. *Kozup* involved a newborn receiving a blood transfusion for hypovolemia, a condition associated with premature birth, in January 1983. The child received three transfusions which were contaminated with the virus now known to transmit AIDS. The contaminated blood was supplied by the American Red Cross, which received it from an individual in 1982, and was administered by the Georgetown University Hospital. The child subsequently died from complications related to the AIDS infection.

In its analysis, the District Court reviewed the medical chronology of the AIDS virus to determine exactly what was known about AIDS by the scientific and medical communities and when. As in the present case, much of what the plaintiffs claimed in *Kozup* turned on allegations that defendants knew or should have known certain facts related to AIDS. This Court needs not rehash the same chronology medical history of AIDS which the *Kozup* Court so methodically composed. It is suffice to conclude that it was not until 1984 that the medical community reached a consensus as to the proposition that AIDS was transmittable by blood. *Kozup, supra;* Curran, *Acquired Immune Deficiency Syndrome (AIDS) Associated with Transfusions*, 310 New Eng.J.Med. 69, 70 (1984). In April, 1984, scientists identified the virus HTLV–III as the cause of AIDS. Fischinger, *Acquired Immune Deficiency Syndrome: The Causative Agent and the Evolving Perspective*, 9 Current Problems in Cancer 4 (1985). By May, 1985, an enzyme-linked immunosorbent assay (ELISA) test was made available, which screens for the antibodies sensitive to HTVL–III. Hermann, *AIDS: Malpractice and Transmission Liability*, 58 U.Colo.L.Rev. 63, 77 (Winter 36–87). Once it was available, the Center for Disease Control issued guidelines for implementing the ELISA test.

This laboratory test has proven 98.6 percent effective in detecting exposure to AIDS. Comment, *Transfusion Associated Acquired Immune Deficiency Syndrome (AIDS): Blood Bank Liability?*, 16 U.Balt. L.Rev. 81, 86 & n. 36 (Fall 1986). When coupled with a second test, the Western Blot Analysis, the rate of detection for exposure to AIDS rises to 100 percent. *Id.* at n. 37.

However, there is still no test for presence for the virus itself, nor is there a cure for the disease. *Kozup, supra* at 1053. As no recent breakthrough has been cited to the Court for the diagnosis, testing or treatment of AIDS, it can rely upon the Court's analysis and conclusions in *Kozup.*

■ As in *Kozup*, plaintiff alleges negligence as a basis for recovery from defendant. In short, plaintiff alleges that Cutter was negligent in failing to take measures designed to protect her husband from being infected with AIDS. Specifically, plaintiff contends that alternatives existed for the testing of the AIDS virus in defendant's product, citing the procedure of heat treatment. However, a review of the medical chronology set forth in *Kozup* reveals this contention inaccurate. As of 1983, no pharmaceutical company, blood bank, hospital or federal health care regulator in the United States took special AIDS-related measures in connection with transfusions. *Kozup, supra* at 1055. Doctors diagnosed plaintiff's decedent with AIDS in the Fall of 1983 before any specialized measures existed. Furthermore, plaintiff can point to no organization, government entity or medical association within the United States which advocated the use of plaintiff's alternative testing as a means of screening defendant's product for AIDS. Instead, plaintiff offers testimony of an expert whose current opinion is that pharmaceutical companies should have used a heat treating method to exclude viruses such as AIDS. This expert cannot alone create a standard of care or a prima facie case of negligence, where he is entirely in opposition to the standard prevailing in 1982–83. His opinion cannot be permitted to supplant the standard of care as established by the conduct of the pharmaceutical community which plaintiff's expert criticizes. To permit this hindsight opinion to

preclude summary judgment would violate the United States Supreme Court's mandate that Rule 56 be construed with due regard to defendants who have shown by competent evidence that a plaintiff's claims have no factual basis. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

■ It is clear that in order to prevail on the theory of negligence, plaintiff must show that defendant, Cutter Laboratories, violated a standard of care. That standard is established by looking to the conduct of the industry or profession in similar circumstances as of that date. *Ulrich v. Kasco Abrasives Co.*, 532 S.W.2d 197 (Ky. 1976). The standard of care for pharmaceutical companies at the time of decedent's transfusions did not require defendant to screen or perform plaintiff's suggested alternative testing to eliminate the risk of AIDS contamination. Consequently, no negligence occurred as defendants met the standard of care as then existed within the industry.

As stated in *Kozup*, this Court is mindful of the terrible personal tragedy that David McKee's struggle with AIDS must have been for the McKee family, especially in light of the recent breakthroughs in AIDS research. However, because plaintiff fails to make out a prima facie case of negligence, summary judgment for defendant on the issue of negligence is proper as well. An appropriate Order shall be entered.