**John and Jane DOE, Plaintiffs,**

v.

**CUTTER LABORATORIES, A DIVISION OF MILES LABORATORY, INC.; and Miles Laboratories, Inc.; Cutter Biological, Inc., a division of Miles Laboratory, Inc., and Miles Laboratories, Inc., Defendants.**

Civ. A. No. CA–2–87–0113.

United States District Court,
N.D. Texas,
Amarillo Division.

Feb. 5, 1988.

Jay Harvey, Tom Upchurch, Jr. & Associates, Amarillo, Tex., for plaintiffs.

Thomas C. Riney, Gibson, Ochsner & Adkins, Amarillo, Tex., Duncan Barr, O'Connor, Cohn, Dillon & Barr, San Francisco, Cal., for defendants.

## ORDER

MARY LOU ROBINSON, District Judge.

Before the Court is Defendant's Motion To Dismiss Plaintiff's causes of action in strict liability and breach of implied warranty of fitness in the above-styled and enumerated cause. For the following reasons, the Court agrees that these causes of action should be DISMISSED.

Section 77.003 of the Tex.Civ.Prac. & Rem.Code provides as follows:

(a) A person who donates, obtains, prepares, transplants, injects, transfuses, or transfers a human body part from a living or dead human to another human or a person who assists or participates in that activity is not liable as a result of that activity.

(b) The person remains liable for the person's own negligence.[1]

Section 77.001 of the Tex.Civ.Prac. & Rem.Code defines "human body part" as any tissue, organ, blood or components thereof from a human.[2]

When these statutes [sections 77.001–77.-004 Tex.Civ.Prac. & Rem.Code] were originally drafted, the legislative intent was clear that the concept of product liability was not to be applied to "human body

---

1. The Code Construction Act (V.A.C.S. Article 5429b–2) defines "person" as any legal entity; therefore the words "physician, surgeon, hospital, blood bank, tissue bank, or other person or entity" are omitted from the revised law. Revisor's Note.

2. The source law for Section 77.002 refers to "human tissue, organs, blood and components thereof"; the source law for Section 77.003 contains a substantially identical reference. The term "human body part" is defined here for use in those sections. Revisor's Note.

parts." 62nd Legis., p. 4122 (1971); 62nd Legis., chp. 613, p. 1985 (1971).

The cause of action for breach of the implied warranty of fitness is created in Section 2.315 of the Tex.Bus. & Comm. Code. This statute imposes an implied warranty of fitness of goods sold for a particular purpose, unless the warranty is excluded or modified under the next section. The next section, 2.316 provides as follows:

> (e) The implied warranties of merchantability and fitness shall not be applicable to the furnishing of human blood, blood plasma, or other human tissues or organs from a blood bank or reservoir of such other tissues or organs. Such blood, blood plasma or tissue or organs shall not for the purpose of this Title be considered commodities subject to sale or barter, but shall be considered as medical services.

The products in dispute are known as cryoprecipitate and lyophilized plasma products. The parties do not dispute that these products are derived from human blood and plasma. Plaintiffs contend that because the statutes do not specifically exempt blood derivatives, the manufacturers of the disputed products are not exempt from liability under these statutes.

Cryoprecipitate is obtained from a single donor or handful of donors whose blood and or plasma contains blood clotting factors. The lyophilized products are derived from pooled plasma obtained from numerous donors. The lyophilized products are then freeze-dried while cryoprecipitate must be kept in a frozen state.

No Texas case addressing these particular statutes in the context of the present action have been cited.[3] However, in construing a similar Louisiana statute, the 5th Circuit held that without the sale of a marketed product, there can be no actions for breach of warranty for injuries or death resulting from blood transfusions. *Heirs Of Fruge v. Blood Services*, 506 F.2d 841, 846 (5th Cir.1975).[4] This reasoning applies to the Texas statute because blood or blood plasma is not to be considered a commodity for sale but rather a medical service.

In *Coffee v. Cutter Biological*, 809 F.2d 191 (2d Cir.1987), the Court held that the Connecticut blood shield statute was intended to preclude the assertion of product liability and implied warranty claims arising out of a contract for the sale of blood components. The Court further held that this statute applied to commercial manufacturers and distributors of blood products. It should be noted that this particular statute reads as follows, "...blood, blood plasma, and the components, derivatives or fractions thereof, or tissue or organs shall not be considered commodities but shall be considered as medical services."[5]

---

3. Prior to the enactment of the blood shield statutes, the Dallas Court of Appeals rendered a decision in which they stated that the supplying of blood for a fee is in its essence the rendition of a service, not a commercial sale of property and therefore there could be no breach of an implied warranty of fitness. *Goelz v. J.K. & Susie Wadley Research Institute & Blood Bank*, 350 S.W.2d 573, 577 (Tex.Civ.App.—Dallas 1961, writ ref'd. n.r.e.).

This decision was apparently prompted by the opinion rendered in the *Perlmutter* case, being a case of first impression. In *Perlmutter*, the patient contracted serum hepatitis from a blood transfusion obtained at a hospital. The patient sued the hospital on the theory that supply of the blood for $60.00 a pint constituted a sale under the New York Sales Act and that warranties of fitness and merchantability attached to the transaction. The patient further alleged that these warranties were breached and the hospital was therefore strictly liable for the resulting injuries. The court held that the supply of blood was a service and not a sale and no warranties attached. The court reasoned that the patient had not bargained for the blood itself but for the availability of hospital services to provide the necessary medical treatment. *Perlmutter v. Beth David Hospital*, 308 N.Y. 100, 123 N.E.2d 792 (1954).

4. Article 1764 of the Louisiana Code provided as follows:

... the implied warranties of merchantability and fitness shall not be applicable to a contract for the sale of human blood, blood plasma or other human tissue or organs from a blood bank or reservoir of such other tissues or organs. Such blood, blood plasma or tissue or organs shall not for the purposes of this article be considered commodities subject to sale or barter but shall be considered as medical services.

5. Conn.Gen.Stat.Sec. 19a–280.

In a case construing the Kentucky blood shield statute, the federal district court held that a manufacturer/supplier of a lyophilized plasma product was shielded from strict liability and liability for breach of warranty. *McKee v. Miles Laboratories, Inc.*, 675 F.Supp. 1060 (E.D.Ky.1987).[6]

This Court concludes that a supplier of blood derivative products such as lyophilized plasma and cryoprecipitate is not liable under theories of strict liability and breach of the implied warranty of fitness. The legislative intent in the enactment of these statutes is clear.

It is therefore ORDERED that Plaintiff's causes of action in strict liability and breach of the implied warranty of fitness are DISMISSED.

IT IS SO ORDERED.

---

**6.** This particular statute specifically exempted blood products and blood derivatives. K.R.S. 139.125. This case is reported on Westlaw at 1987 WL 24717.