925 F.2d 1462
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Eleanor R. BEARD, Plaintiff-Appellant,
v.
COCA COLA BOTTLING COMPANY OF OHIO, Defendant-Appellee.
 No. 90-3386.
 United States Court of Appeals, Sixth Circuit.
 Feb. 20, 1991.
 
 Before MERRITT, Chief Judge, Nathaniel R. JONES, Circuit Judge, and WELLFORD, Senior Circuit Judge*.
 PER CURIAM.
 
 
 1
 In this civil rights action charging employment discrimination and resulting termination under the Age Discrimination Act (ADEA), 29 U.S.C. Sec. 621, et seq., the district court granted defendant Coca Cola Bottling Company of Ohio's (Coca Cola) motion for summary judgment. Plaintiff Eleanor R. Beard (Beard) has appealed asserting that she had established a prima facie case, and that it was error to hold, as a matter of law, that defendant had established that the discharge was not due to her age. We AFFIRM.
 
 
 2
 We set out the facts using, to a considerable extent, those set out in plaintiff's brief:
 
 
 3
 In late 1986, Coca-Cola Enterprises, a legally separate corporation from the Coca-Cola Company, took over the Columbus bottling distribution center. Several months later, appellee found appellant's job performance to be inadequate. According to appellee, in 1986 it found that appellant was "slow to learn new tasks" and that her work was "below average" and "needed frequent checking." Appellee further found that appellant had a "bad attitude."
 
 
 4
 Appellant denies that her work performance was inadequate, that she was difficult to work with, or that she had a bad attitude. Several of her former supervisors have signed affidavits swearing that appellant performed her job well. Similarly, some of her former coworkers have signed affidavits swearing that appellant was easy to get along with and was liked by her peers. Appellant has been informed that her much younger replacement takes 50 ± hours per week to perform the same amount of work which she had previously performed in 40 hours.
 
 
 5
 Appellant believes the real reason for her termination was age discrimination. Her belief is based on a number of factors. First, she believes her former supervisor, Randall Wegener, disliked older employees and therefore treated her differently than her younger counterparts. Appellant was specifically told Wegener did not like long-term employees. In his deposition, Wegener admitted that he did not punish Lori Stephens, a woman in her 20's, for sending an invoice which failed to mention what the bill was about. He also stated that a Denise, who was in her 20's, was only given a warning for being absent approximately once a week for several months. Wegener could not recall whether the warning was written or oral. Finally, Wegener said he did not punish in any way Linda Holliman, a woman in her 30's, for her "failure to properly submit return checks through the accounting system." Appellant believes the above treatment of these younger employees contrasts greatly with the way she was treated by Wegener.
 
 
 6
 The second reason appellant believes she was a victim of age discrimination was that she noticed that after the Coca-Cola Enterprise takeover in late 1986, appellee systematically fired the older and more senior employees. Appellant believes appellee did this in order to reduce its pension obligations and to lower its wage scale. Appellant is not alone in this belief. Donald Morehart, Calvin Higgins, Charles Yoakum, Robert Renspie and Donna Swayne have all signed sworn statements stating their belief that appellee, after it was taken over by Coca-Cola Enterprises, systematically fired older workers with many years of experience so that it could reduce its pension obligations and lower its salary structure. In addition, Higgins has initiated an age discrimination lawsuit.
 
 
 7
 Appellant was fifty-three when she was fired. She had worked for appellee for twenty-two years. In a mere twenty-one months, her pension benefits would have completely vested and she would have been entitled at age 55 to pension benefits of approximately $700.00 per month, plus free medical insurance. Appellant was replaced by a woman in her 20's.
 
 
 8
 The district court made detailed findings of facts which we find not to be clearly erroneous.
 
 
 9
 Assuming that Beard, as she contends, has made out a prima facie case, despite some doubt about her qualifications in 1986 and in 1987, we look to defendant's proof as to valid business reasons for the termination apart from considerations attendant to age.
 
 
 10
 There are substantial factors indicating nondiscriminatory business reasons for the discharge. In the viewpoint of responsible management, supported by documentation, there were a number of reasons after 1980 for Beard to be terminated--poor performance, lack of timeliness, inappropriate behavior on the job, and lack of cooperation with her superiors. There is strong evidence, then, of a non-pretextual basis for the termination in this dispute.
 
 
 11
 The district court then considered plaintiff's response or rebuttal to defendant's evidence carefully in its findings of fact, portions of which we set out:
 
 
 12
 Plaintiff has submitted various documents in response to defendant's motion. Plaintiff first points to the fact that she was awarded an 8.1% merit increase in salary in 1982, and a 6.9% merit increase in salary in 1984. Plaintiff argues that these increases are inconsistent with defendant's position that her performance deteriorated steadily after 1982. However, the record also shows that in 1985, plaintiff was given only a 4.7% increase in salary, and that in 1986, plaintiff was given no increase and was placed on probation. These figures do not demonstrate that defendant acted in a manner inconsistent with its stated evaluation of plaintiff's performance.
 
 
 13
 Plaintiff has offered the affidavits of Charles Yoakum, plaintiff's supervisor from 1970 to 1975, and Scott Gallentine, plaintiff's supervisor from 1977 to 1980. These individuals stated that plaintiff was respectful and thorough in her work. However, it is plaintiff's performance at the time of her termination which is relevant. ... Plaintiff has also submitted the affidavit of Donna Swayne, who states that in her opinion plaintiff was a diligent and thorough worker. According to the affidavit of Owen Segall, defendant's division sales manager, Donna Swayne was terminated in 1986 for poor performance. In addition, Ms. Swayne's affidavit does not reveal how, as a telephone operator, she would be qualified to express an opinion on the quality of plaintiff's work. The basis for her statement that everyone got their paychecks on time and that plaintiff worked well with her peers is not demonstrated. Likewise, her broad unspecific assertions that she never witnessed plaintiff engaging in hostile conversations or other annoying conduct does not refute defendant's claim that plaintiff engaged in such conduct when it is not apparent from Ms. Swayne's affidavit that she was in a position to constantly monitor plaintiff's activities.
 
 
 14
 .............................................................
 
 
 15
 ...................
 
 
 16
 * * *
 
 
 17
 Plaintiff has also submitted her own affidavit, in which she states that she competently and professionally performed all her duties as payroll clerk. She denies in broad terms that her job performance was inadequate, that she was difficult to work with, that she slammed doors or telephone receivers or sang out loud, or that she was disrespectful to her supervisors.
 
 
 18
 There appears to be no material evidence that Randall Wegener disliked older employees generally or had any animus against Beard in particular. There is no question but that in early February 1987, both Wegener and Beard signed a memorandum setting out a "probation review" of Beard's work problems in 1986 and early 1987. She was placed on probation a total of 150 days to determine whether she could substantially improve her work habits and performance in eight specific areas. Beard was carefully observed by supervisors for six months before finally being discharged. Four years before her performance report indicated a "poor attitude" and that she was "slow to learn." She was passed over for pay raises twice after that work appraisal. After Beard's termination, part of her payroll duties were taken over by automatic data processing. Her younger successor, who was assigned additional duties, had worked for an accounting firm and worked particularly in tax computation.[1]
 
 
 19
 Wegener had discharged Kathy Gordon (under 40 years of age), who supplied Beard an affidavit in support of her competence prior to 1985. He had also discharged another female, Donna Swayne (under 40),[2] who also supplied plaintiff an affidavit, and had disciplined other employees for other infractions. There is no basis in this record, then, showing age discrimination in any way with respect to defendant's actions vis-a-vis Gordon, Swayne, or that Beard's successor was selected for reasons other than solid qualifications. Nor is there statistical evidence supporting any practice by Coca Cola of firing older employees disproportionately. Plaintiff does not dispute the district court's finding that the percentage of employees over 40 years of age has remained relatively constant throughout the period in question, and that discharges during the period took place during a reduction in the work force. In her deposition, Beard made no mention of any alleged pattern of discharging older employees. Plaintiff makes reference to two long-term, older employees, other than herself, who were terminated in 1987. She also made reference to one (Yoakum) whose job was eliminated in 1987, and another who was offered a demotion in 1987. All purportedly believed the action taken was to avoid greater pension liability.
 
 
 20
 We find no error in the district court's discounting of affidavits from previous supervisors about Beard's performance relating to years prior to the period beginning in 1981 when there were objective records in her file by several of Beard's supervisors relating to her poor performance or attitude.[3]
 
 
 21
 We review the grant of summary judgment under a de novo standard. McKee v. Cutter Laboratories, Inc., 866 F.2d 219, 220 (6th Cir.1989). Federal Rule of Civil Procedure 56(c) governs the granting of summary judgment and provides:
 
 
 22
 The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
 
 
 23
 The evidence must be view in the light most favorable to the nonmoving party. Adickes v. H.S. Kress & Co., 398 U.S. 144 (1970). There is an issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party opposing summary judgment must make a sufficient showing to establish each of the essential elements of its case on which it will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
 
 
 24
 An age discrimination case consists of four elements: (1) plaintiff was a member of a protected class; (2) plaintiff was subjected to adverse employment action; (3) plaintiff was qualified for the position; and (4) plaintiff was replaced by a person not a member of the protected class. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Gagne v. Northwestern Nat'l Ins., 881 F.2d 309, 313 (6th Cir.1989). The employer then bears the burden of production to provide a legitimate nondiscriminatory reason for the adverse employment action. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). Once the employer's burden is carried, the burden shifts back to the plaintiff to produce direct, indirect, or circumstantial evidence rebutting the employer's proffered reason for termination. Wards Cove Packing v. Antonio, 109 S.Ct. 2115 (1989). "Unless the plaintiff introduces counter-affidavits and argumentation that demonstrate that there is reason to disbelieve this particular explanation, there is no genuine issue of material fact." Healey v. New York Life Ins., 860 F.2d 1209, 1215-16 (3d Cir.1988), cert. denied, 109 S.Ct. 2449 (1989).
 
 
 25
 The only element of the prima facie case which Coca Cola contests is Beard's qualification. Coca Cola argues that there is no genuine issue as to Beard's lack of qualification at the time of discharge and that this lack of qualification is the reason it fired Beard. Coca Cola argues further that the reason it offered for discharging Beard has not been challenged by sufficient evidence to raise a genuine issue of material fact. The district court found that defendant was correct in its latter contention, and there is no material evidence indicating that age was a factor in plaintiff's discharge.
 
 
 26
 This is a close case for granting summary judgment, and plaintiff has demonstrated some evidence to support her position. She may have believed that Coca Cola, or other employees, harassed her. We are persuaded, however, that the district court applied the proper standards in reviewing the record, and was not in error in reaching its judgment. We, therefore, AFFIRM essentially for the reasons discussed by the district court.
 
 
 
 *
 Judge Wellford assumed senior status on January 21, 1991
 
 
 [1]
 Coca Cola's (and Wegener's) first choice for the position was a woman close to plaintiff's age
 
 
 [2]
 The district court found that Swayne "had never been in a position to observe or evaluate [Beard's] job performance."
 
 
 [3]
 One such supervisor's affidavit related to a period twelve years before the time in question