565 A.2d 335

Paul E. LUNDGREN, et ux.

v.

FERNO-WASHINGTON COMPANY, INC.

No. 112, Sept. Term, 1989.

Court of Special Appeals of Maryland.

Nov. 2, 1989.

Henry E. Weil (Belli, Jacobs, Weil & Jacobs, on brief), Rockville, for appellants.

David A. Boynton (Brian J. Nash and Montedonico & Mason, on brief), Rockville, for appellee.

Argued before BISHOP, KARWACKI, JJ., and JAMES S. GETTY, Associate Judge of the Court of Special Appeals (retired) Specially Assigned.

KARWACKI, Judge.

Paul E. Lundgren appeals from a judgment entered upon a jury verdict against him in the Circuit Court for Montgomery County (Cave, J.) in favor of the appellee, Ferno–Washington Co., Inc. Appellant sought damages for an injury he received when a cart which he was using to transport a copy machine collapsed. The case was submitted to the jury on the issues of negligent design and strict liability and it resolved both in favor of appellee. Appellant raises four issues on appeal, all concerning the court's instructions to the jury.

    I. Was it proper for the trial judge to make the initial determination as to whether the cart was an "inherently dangerous" object rather than submitting this question to the jury?

II. Was the trial judge's instruction on the "latent/patent" rule proper?

III. Was the appellant entitled to a failure to warn instruction?

IV. Were the trial judge's instructions so confusing and ambiguous as to amount to reversible error?

## FACTS

On or about September 18, 1983, appellant, a sales representative of Commonwealth Copy Productions, Inc. of Rockville, transported a 300 lb. Panasonic photocopy machine to a prospective customer at the Fourth Presbyterian Church in Bethesda. Before leaving for this sales demonstration, he placed the copy machine on a Model 283, Salesmaker cart, which was designed, manufactured and sold by appellee, and placed a strap over the machine to secure it to the cart. The cart's legs were designed so that they would fold under, and the cart could be stored, with machine on top, in the back of a station wagon. The appellant then engaged a manual safety lock mechanism on the cart, which was designed to prevent the legs of the cart from collapsing, and wheeled the cart to his station wagon. He disengaged the safety lock mechanism, pulled the handle release bar to collapse the rear wheels, and rolled the cart and copier into the back of his station wagon.

Appellant drove to the church and parked next to a curb, approximately 15 feet from the church door. He removed the cart carrying the copy machine from the vehicle, and the front legs snapped down. He stated that he then engaged the locking mechanism to prevent the legs from collapsing, lifted the cart over the curb, and pulled the cart to the church threshold. He then opened the church door and held it open with his back while he lifted the cart over the door sill. During this maneuver, the machine shifted on the cart, and as he reached for the copier to prevent it from sliding further, the cart collapsed, knocking him to the floor and causing him serious and permanent injuries.

Appellant[1] sought recovery on theories of negligence, breach of warranty, and strict liability. At trial, appellant's expert witness, Dr. William Walston, testified that the cart's locking mechanism was defectively designed. He cited two factors in support of his opinion. The first was that the locking mechanism required the operator to engage the lock manually instead of locking automatically. The second factor was that the only thing holding the mechanism in position was friction. He said that because of this design it was possible that the lock bar could inadvertently slide back and forth, thereby disengaging the lock.

Dr. Watson also testified that an automatic locking device could have been used instead of the manual one, that this device was available when the cart was manufactured in 1979, that the automatic device would not have adversely affected the utility of the cart, and that it would have been cost effective to utilize the automatic device.

Dr. Donald Vannoy testified, as an expert called by the appellee, that the cart, including the locking mechanism, was not defective and that it complied with industry standards at the time. He also testified that although the automatic locking device could have been used in place of the manual one, that each had its own advantages.

The case was submitted to the jury on the issues of strict liability in tort and negligence with respect to the design of the cart and the jury returned a verdict in favor of the appellee.

### I.

The Court of Appeals in *Phipps v. General Motors Corp.*, 278 Md. 337, 363 A.2d 955 (1976), adopted the Restatement (Second) of Torts § 402A (1965) as the law of strict liability in tort:

---

1. Appellant's wife, Karin F. Lundgren joined him in a claim for loss of consortium against appellee. She is also an appellant in this Court.

**402A. Special Liability of Seller of Product for Physical Harm to User or Consumer**

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Inasmuch as Section 402A involves the standard of unreasonable danger, a court in a design defect case such as the one at bar must weigh "the utility of risk inherent in the design against the magnitude of the risk." [2] *Phipps* at 345, 363 A.2d 955. This, essentially, is the factual determination which a jury is called upon to make in a defective

---

**2.** The *Phipps* court approved the use of the following seven factors suggested by Professor Wade in determining whether a product is reasonably safe. *Phipps, supra* at 345, 363 A.2d 955. These factors are:

"(1) the usefulness and desirability of the product, (2) the availability of other and safer products to meet the same need, (3) the likelihood of injury and its probable seriousness, (4) the obviousness of the danger, (5) common knowledge and normal public expectations of the danger (particularly for established products), (6) the avoidability of injury by care in use of the product (including the effect of instructions or warnings), and (7) the ability to eliminate the danger without seriously impairing the usefulness of the product or making it unduly expensive."

Wade, *Strict Tort Liability of Manufacturers,* 19 S.W.L.J. 5, 17 (1965); *See also Valk Manufacturing v. Rangaswamy,* 74 Md.App. 304, 314, 537 A.2d 622 (1988).

design case.  The court in *Phipps*, however, explained that there are certain cases in which this factual determination need not be made because "there are those conditions which whether caused by design or manufacture, can never be said to involve a reasonable risk." [3]  *Id.*  Thus, an initial determination as to whether the product involves an "inherently unreasonable risk" is required.  Only in those cases where the risk is not inherently unreasonable is the jury called upon to apply the balancing test to determine whether a product is reasonably safe.  As a result, "in Maryland design cases not included in the limited category of inherently unreasonable risks, strict liability, in the usual sense, does not apply."  *Singleton v. International Harvester Co.*, 685 F.2d 112, 115 (4th Cir.1981).

■  Consequently, this initial determination as to whether the risk involved is inherently unreasonable is a critical one.  If the court finds that the product creates a risk that is indeed inherently unreasonable, the plaintiff, in order to recover, need only show that (a) the seller is in the business of selling such a product;  and (b) that it was expected to and did reach the user or consumer without substantial change in the condition in which it was sold.  If the court finds otherwise, the burden on the plaintiff is much greater; he or she must also persuade the jury that the product is unreasonably dangerous.

In the case at bar, the court ruled that the cart did not create an inherently unreasonable risk of harm.  Appellant

---

**3.**  The *Phipps* court cited the following examples of defects that created an inherently unreasonable risk:  the steering mechanism of a new automobile which caused the car to swerve off the road, *Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1 (1960);  the drive shaft of new automobile which separated from the vehicle when it was being driven in a normal manner, *Elmore v. American Motors Corp.*, 70 Cal.2d 578, 75 Cal.Rptr. 652, 451 P.2d 84, 33 A.L.R.3d 406 (1969);  and the brakes of a new automobile which suddenly failed, *Sharp v. Chrysler Corp.*, 432 S.W.2d 131 (Tex.Civ.App. 1968).  In addition, the Court of Appeals held in *Phipps,* that an accelerator of a new automobile which stuck without warning causing the vehicle suddenly to accelerate, also created an inherently unreasonable risk.

argues that this determination is one that should be made by the jury, not the court. We disagree.

■ Determining whether a manufacturer should be held strictly liable for injuries caused by the design of a particular product is a decision that involves the consideration of important policy issues. Such decisions are best left to the courts, which can carefully consider and apply them. In addition, judicial determination of whether a given product creates an inherently unreasonable risk prevents strict liability from being imposed inconsistently, something that would certainly result if the issue was sent to the jury each time it arose. We agree with Professor Wade, who assessed the problem with the appellant's position as follows:

> The difficulty comes when it is not just the single article which is to be classed as unsafe because something went wrong in the making of it, but a whole group or class or type which may be unsafe because of the very nature of the design. It is here that the policy issues become very important and the factors ... must be collected and carefully weighed. It is here that the court—whether trial or appellate—does consider these issues in deciding whether to submit the case to the jury ... Court control of jury action is more extensive here than in the ordinary negligence action.

Wade, *On the Nature of Strict Tort Liability For Products*, 44 Miss.L.J. 825, 838–39 (1973).

■ The policy considerations involved in the application of strict liability to objects that create an inherently unreasonable risk of harm are similar to those involved in the application of strict liability for abnormally dangerous activities. *See* Restatement (Second) of Torts § 520 (1977). Consequently, we find the Restatement's justification for judicial determination of whether an activity is abnormally dangerous particularly instructive.

> The imposition of strict liability, on the other hand, involves a characterization of the defendant's activity or enterprise itself, and a decision as to whether he is free to

conduct it at all without becoming subject to liability for the harm that ensues even though he has used all reasonable care. This calls for a decision of the court; and it is no part of the province of the jury to decide whether an industrial enterprise upon which the community's prosperity might depend is located in the wrong place ...

*Id.* at comment 1.

Likewise, we feel it is not the province of the jury to decide that a particular product, which may serve an important function in the community, is inherently dangerous. Because of the policy considerations at stake and the need for consistent application, this determination is one that a jury in each individual case is ill equipped to make.

## II. and III.

Appellant argues that the court's instruction as to the "latent/patent rule"[4] was improper because it confused the jury and is "inconsistent with the multi-faceted balancing approach which the Maryland courts have adopted" with respect to design defect cases (Appellant's brief at 12). Appellant relies on Judge Wilner's comment in *Banks v. Iron Hustler Corp.*, 59 Md.App. 408, 422, 475 A.2d 1243 (1984) that "we are persuaded that the 'latent/patent rule' is an anachronism and ought to be discarded."

Additionally, appellant argues that the court erred in not giving a failure to warn instruction, which he claims was warranted by the testimony of Dr. Walston. *See* Maryland Pattern Jury Instructions (2d ed. 1984) 26:4.

Unfortunately for the appellant, neither of these issues were preserved for our review. Rule 2–520(e) pre-

---

4. The "latent/patent rule" imposes liability on a manufacturer only in those cases where the product has a latent defect. If the defect is patent, the manufacturer is under no duty to attempt to make the product safer, because, "the manufacturer has the right to expect that such persons will do everything necessary to avoid such contact, for the very nature of the article gives notice and warning of the consequences to be expected, of the injuries to be suffered." *Banks v. Iron Hustler Corp.*, 59 Md.App. 408, 419, 475 A.2d 1243 (1984), quoting *Campo v. Scofield*, 301 N.Y. 468, 472, 95 N.E.2d 802, 804 (1950).

cludes appellate review of a party's exception to a jury instruction "unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection." This rule affords the court an opportunity to consider the argument and to correct or add to the instructions before the jury retires. *Washington Suburban Sanitary Comm'n v. Musgrove,* 203 Md. 231, 237, 100 A.2d 27 (1953); *see also* Rule 8–131. Appellant said nothing at all about the latent/patent rule when the instruction was given, and although the issue of failure to warn was briefly discussed, no exception was taken when the court failed to give that instruction.

### IV.

■ Appellant finally argues that the court's instructions were confusing and ambiguous. Appellant cites selected quotations from the jury instructions as support for this proposition. When reviewing jury instructions, appellate courts are to consider the instruction "as a whole and not selectively examine individual statements which, out of context, appear misleading or improper." *Dean v. Redmiles,* 280 Md. 137, 163, 374 A.2d 329 (1977). Judge Cave's instructions, read as a whole, fairly and adequately state the applicable law. He briefly discussed the background of products liability law, used the example of a chain saw to differentiate between a product that is inherently dangerous, and the product in the case at bar, which he ruled is not. He then discussed the two theories of liability that were being submitted to the jury, strict liability and negligent design, and discussed the elements of each. He concluded with the latent/patent instruction.

It is unnecessary for the court to set forth in minute detail the limitations of every conceptual interpretation that might be placed upon his instruction. *Hartman v. Meadows,* 243 Md. 158, 163, 220 A.2d 555 (1966). This Court and the Court of Appeals have consistently held that if jury instructions, when read as a whole, clearly set out the

applicable law, then there is no reversible error. *Beckner v. Chalkley,* 19 Md.App. 239, 248, 310 A.2d 569 (1973).

JUDGMENT AFFIRMED; COSTS TO BE PAID BY THE APPELLANT.