Randy J. JONES, Elizabeth M. Jones, Plaintiffs–Appellants,

v.

MILES LABORATORIES, INC., individually and d/b/a Cutter Laboratories, Defendant–Appellee.

No. 88–8921.

United States Court of Appeals, Eleventh Circuit.

Nov. 14, 1989.

George H. Connell, Jr., Atlanta, Ga., for plaintiffs-appellants.

Stephen M. Lore, Freeman & Hawkins, Atlanta, Ga., Duncan Barr, O'Connor, Cohn, Dillon & Barr, Christopher W. Bayuk, San Francisco, Cal., Geoffrey R.W. Smith, McCutchen Doyle Brown & Enersen, Washington, D.C., for defendant-appellee.

Before KRAVITCH, Circuit Judge, HILL*, Senior Circuit Judge, and POINTER**, Chief District Judge.

POINTER, Chief District Judge:

The issue for decision is whether the district court erred in granting defendant's motion for judgment notwithstanding the verdict, on a claim of negligence relating to the manufacture of a blood product. We find no error, and so affirm the district court's order.

I.

The following facts are not disputed. Appellant Elizabeth M. Jones is the widow and executrix of the estate of Randy J. Jones, who died on March 12, 1989, while this case was on appeal. Randy Jones was a hemophiliac who suffered from acquired immune deficiency syndrome (AIDS). Appellee Miles Laboratories, Inc. ("Miles") manufactured Koate, also known generically as Factor VIII, a blood product used in treatment of hemophiliacs. The Joneses filed this action[1] against Miles, contending that Mr. Jones contracted AIDS from Koate with which he was treated in the fall of 1983, and that Miles was negligent in manufacturing the Koate.[2]

Koate is manufactured from human plasma. Miles acquires plasma from paid donors through plasma collection centers. Among the plasma collection centers which Miles used during the period at issue was Austin Blood Components, Inc., ("ABC") in Austin, Texas. For purposes of this appeal, ABC was the agent of Miles.[3]

Among the donors from whom ABC collected plasma was Christopher Whitfield, who died from AIDS on October 21, 1983. After learning of Whitfield's death and its cause, Miles discovered that Whitfield had been a plasma donor at ABC in 1982 and 1983. Miles determined the lot numbers of Koate in the production of which Whitfield's plasma had been used, and endeavored to recall all Koate in those lots. Whitfield had made plasma donations at ABC on January 31, 1983, and on February 3, 1983. Those donations were used in lot 8476. Koate from that lot had already been administered to Mr. Jones. Though Whitfield made donations on other dates as well, those other donations did not affect Mr. Jones.

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Sam C. Pointer, Jr., Chief U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. The Joneses filed this action in Georgia state court. Miles removed it, on the basis of diversity of citizenship, to the United States District Court for the Northern District of Georgia.

2. The complaint also included strict liability and breach of warranty claims. The district court granted summary judgment for defendant on those claims. That grant of summary judgment is not appealed.

3. The jury found that Miles had control over ABC's plasma collection procedures to such an extent that ABC should be considered an agent of Miles. That finding is not challenged here.

The Joneses contended that ABC was negligent in its collection of plasma from Whitfield on January 31 and February 3, 1983, in that ABC failed adequately to ascertain that donated plasma was free of contagion. There is evidence that Whitfield was a homosexual, and as such a member of a group now known to be at high risk for AIDS. ABC did not ask Whitfield, on January 31, 1983, or February 3, 1983, whether he was a member of a group at high risk for AIDS, nor specifically whether he was a homosexual. Nor did ABC, on those dates, require Whitfield to sign a statement that he was not a member of a gropu at high risk for AIDS. Plaintiffs' claim of negligence, based on the failure of ABC to take those steps, was submitted to the jury.

The jury returned a verdict for the plaintiffs totalling $1.6 million.[4] Defendant moved for judgment in its favor notwithstanding the verdict. On December 5, 1988, the district court granted defendant's motion.[5] The district court ruled that the evidence was not sufficient to support a finding of negligence, and that the evidence was not sufficient to support a finding that Miles' behavior was the proximate cause of the Joneses' injuries. *Jones v. Miles Laboratories, Inc.*, 700 F.Supp. 1127, 1132. Plaintiffs appealed, contending that the district court erred with respect to negligence and proximate causation.

## II.

The standard for reviewing an entry of judgment notwithstanding the verdict is the same as that which the district court must apply in deciding whether to enter the judgment. *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989). In diversity cases, the standard is a matter of federal law. *Miles v. Tennessee River Pulp and Paper Co.*, 862 F.2d 1525, 1527–28 (11th Cir.1989). The court should consider

> all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion[ ] is proper.

*Boeing Company v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969). In granting or upholding such a judgment, a court is not obliged to find that there is *no* conflict in the evidence; the court must merely find that there is not *substantial* evidence opposed to the moving party's position. *Carter*, 870 F.2d at 581; *Boeing*, 411 F.2d at 375.

## III.

Negligence is the failure to exercise that degree of care which an ordinary prudent person would have exercised under the circumstances.[6] Evidence of standard industry practice is often useful in determining the appropriate degree of care in an industry's operations. *Stefan Jewelers Inc. v. Berry*, 295 S.E.2d 373, 163 Ga.App. 626 (1982). Evidence concerning standard practices on donor screening in the plasma collection industry is the centerpiece of the dispute on negligence in this case. According to the district court, testimony concerning industry practice was the only evidence submitted by the plaintiffs on the issue of negligence. 700 F.Supp. at 1132.

---

**4.** The jury awarded Randy Jones $150,000 in medical expenses, $200,000 for pain and suffering, and $750,000 for lost earnings. The jury awarded Elizabeth Jones $500,000 for loss of consortium.

**5.** Miles also moved, in the alternative, for a new trial. The district court conditionally granted that motion in the event that the judgment notwithstanding the verdict was reversed on appeal.

**6.** The district court did not indicate what state's law it was applying with respect to negligence. In this diversity action, the district court ought to have applied Georgia's choice of law rule. In tort actions, Georgia courts look to the law of the state where the injury was incurred. *Risdon Enterprises v. Colemill Enterprises*, 324 S.E.2d 738, 172 Ga.App. 902 (1984). As the Joneses incurred their injuries in Georgia, Georgia law is controlling on questions of negligence in this case.

Appellant, however, points also to evidence which, it is argued, establishes that Miles (through its agent, ABC) failed even to follow its own written standard of care on donor screening. Appellant charges that this failure constitutes negligence, or evidence thereof. As it appears that plaintiffs raised this argument below, this court will consider that evidence as well.

The evidence concerning standard industry practice consisted of the testimony of Richard Riojas, manager of Austin Plasma Center ("APC"). Riojas testified as to the existence of two distinct practices in the industry. One was the practice of having the donor sign, at the time of each donation, a donor card reflecting the donor's responses to a variety of questions. The other was the practice of asking each donor specific questions, at each visit, to establish whether the donor was a member of a group at high risk for AIDS. In this court's view, evidence concerning the signing of donor cards is secondary, if not irrelevant to the issue of negligence.[7] The crux of the dispute is whether ABC should have asked Whitfield, prior to his donations, whether he was a homosexual.

The evidence concerning high risk questioning, as the district court correctly held, was insufficient to support a finding of negligence. The fatal flaw of that evidence is its inconclusiveness concerning the chronology of events. The relevant inquiry for this case is the standard industry practice as of January 31 and February 3, 1983; those are the dates on which Whitfield made plasma donations which allegedly affected Mr. Jones. No substantial evidence suggests that it was industry practice to ask high risk questions on or before those dates.

The testimony of Riojas, in pertinent part, was as follows:

Q. [on direct examination] What is a high risk donor in 1983?

A. One of the high risk categories—or the high risk categories in 1982 were people who were—might have been in Haiti prior to 1977, people who were past IV users, people who have had contact with prostitutes at that time, and also people who—there's one other one.

. . . . .

Q. All right. How about sexual partners of homosexuals?

A. Yes, sir.

Q. Would they be a high risk?

A. Yes, sir, that's the other high risk category.

Q. Would it be important to ask someone those questions if they are a donor?

A. Yes, sir.

Q. And with respect to record keeping, is it important to record the responses to questions like that?

A. Yes, sir, it is.

Q. All right. Would it be a deviation from the record keeping practices in the industry in 1983 not to record the responses?

A. Yes, sir.

. . . . .

Q. [on cross examination] Okay. I also believe in questioning by Mr. Connell that you said in 1982 high risk individuals included IV drug users, visitors to Haiti since 1978, prostitutes, and homosexuals; is that correct?

A. That is correct, sir.

Q. What were they at high risk to?

A. The AIDS virus—being contaminated with the AIDS virus.

Q. And that—and you are sure that that was known in 1982?

A. Yes, sir.

Q. Okay. Were questions implemented by Hyland [8] that were asked of the donor regarding whether they were at high risk?

A. Yes, sir.

**7.** If the failure to ask high risk questions of Whitfield was negligent, it was so regardless of any policy on signatures. If the failure to ask high risk questions was not negligent, then a practice of signing answers to other questions is irrelevant.

**8.** "Hyland" is the corporation to which APC, Riojas' center, sent the plasma it collected. The relationship of Hyland to APC was analogous to the relationship of Miles to ABC.

Q. And anywhere in Mr. Whitfield's chart,[9] were those—do you see where those questions were asked of Mr. Whitfield?

A. No, sir, not in these particular—not in this particular file here. Mr. Whitfield donated at our center—or tried to donate in November of 1982, but in our file we don't have those that particular time. I think these were implemented after Mr. Whitfield had tried donating.

Q. So, after—at least after November 22nd, 1982, it's your testimony that questions regarding high risk donors were implemented by Hyland?

A. That is correct, sir.

Q. Do you recall the first date that Hyland implemented such questions?

A. Not exactly, sir.

Q. Do you recall any FDA recommendations or regulations regarding questions on high risk donors?

A. Yes, sir. Those came about—about—approximately about December.

.    .    .    .    .

Q. Okay. If I can ask you, sir, can you take a look and see if you have those December 1982 documents containing the federal recommendations?

A. Yes, sir.

Q. Could you then forward them to myself and Mr. Connell?

A. Yes, sir.

Record, 5.124–25, 5.130–32.

Bearing in mind that Riojas' testimony was plaintiffs' only evidence on the matter, no evidence suggests that high risk questioning was standard before November 22, 1982. The evidence is uncontradicted that APC did not ask high risk questions before that date. Further, the record contains no evidence that any plasma collection center asked such questions before that date.

Nor does Riojas' testimony, when read closely, reveal any direct evidence as to the time such questioning became standard. It is possible to infer from his testimony that the rise of high risk questioning as industry practice was contemporaneous with the FDA's recommendation or requirement of such a practice. Riojas suggested that the FDA issued such a recommendation in December, 1982. Such an action by the FDA could have established an industry practice; indeed, such an action might in itself determine the appropriate level of care.

Yet Riojas' testimony indicates that he was far from certain as to when such a recommendation was issued. Furthermore, other evidence strongly suggests that the FDA had made no such written recommendation as of February 8, 1983. An internal Miles memorandum of that date, explaining the initiation of high risk questioning, reads as follows:

Q. Is the FDA asking Cutter [Miles] to implement these changes in procedure?

A. Not exactly. We have taken these precautions voluntarily but the FDA is wanting to know what we are doing and is pushing us in the direction we are taking.

Q. Will there be regulatory changes concerning AIDS?

A. We are not sure what form the FDA will choose, but we do expect to see at least some guidelines published in the very near future.

Finally, despite Riojas' professed recollection, no FDA documents from December 1982 have been introduced. The earliest firm evidence of an FDA recommendation is an FDA document dated March 24, 1983.

■ Having considered all the evidence in the light most favorable to appellants, this court concludes that a reasonable jury could only determine that Riojas' reference to December 1982 was mistaken. Thus there was no substantial evidence to suggest that high risk questioning was standard practice in the plasma collection industry, nor that it was required or recommended by the FDA, on January 31 and February 3, 1983.

Nor was there substantial evidence to support plaintiffs' suggestion that ABC failed to follow Miles' own standard of care. The first evidence of Miles' policy of high risk questioning is the memo of February 8, 1983, discussed above. That

---

**9.** Whitfield donated, or attempted to donate, plasma at APC as well as at ABC.

memo, sent to plasma center managers affiliated with Miles, noted the importance of a training session for employees "[b]efore you begin the screening of your donors." This does not suggest that the policy was in effect on January 31 and February 3. Indeed, the memo of February 8 gives rise to an overwhelmingly clear inference that the policy was not yet in effect. That inference gains further support in the record from a Miles press release of February 23, 1983, announcing the institution of the policy of donor screening through high risk questioning.

This court is aware of the shortness of the time span involved in these discussions; it appears that the donations which allegedly infected Mr. Jones were made a few days or weeks before the FDA recommendation and Miles' internal memo. It may appear that to dispute over a matter of days is to split hairs. Yet those few days are crucial to a finding of negligence. This court cannot say, nor could a reasonable jury conclude, that Miles must have known on January 31 what it knew some days or weeks later.

If the record included evidence that high risk questioning *should have been* standard on the dates in question, the issue might be different. The record does contain some evidence on the state of knowledge concerning AIDS in 1983; but it contains no evidence on the particular state of knowledge on the dates crucially at issue here.[10] Knowledge about the causes and transmission of AIDS has grown rapidly, and especially rapidly during certain periods. Without more time-specific evidence, no reasonable jury could have made a judgment as to when high risk questioning *should have been* standard practice. The jury was presented only with evidence as to when high risk questioning *was* standard. That evidence was insufficient to allow a reasonable jury to find Miles negligent. Accordingly, the district court was correct in granting Miles' motion for judgment notwithstanding the verdict.

## IV.

If a plaintiffs' injury would have occurred regardless of the defendant's negligence, then the plaintiff cannot recover. *Hollingsworth v. Harris*, 145 S.E.2d 52, 112 Ga.App. 290 (1965); *Witcher v. Studdard*, 103 S.E.2d 646, 97 Ga.App. 513 (1958). In such a situation, the defendant's actions would not have been the proximate cause of the plaintiff's injuries. The district court ruled that there was no substantial evidence that Miles had proximately caused the Joneses' injuries. On this ground, too, the district court ruled that judgment notwithstanding the verdict was appropriate. This court agrees.

■ Overwhelming evidence indicates that Whitfield would have told ABC, on January 31 and February 3, 1983, that he was not a homosexual, and would have signed a statement to that effect. Thus, even if Miles had exercised the degree of care which the Joneses contended was appropriate, Whitfield's plasma would still have been used to make Koate lot 8476.

The evidence on this subject is as follows. The records of ABC indicate that, on many occasions after February 17, 1983, ABC employees asked Whitfield whether he was a homosexual. On each occasion he replied that he was not. On two occasions, March 3, 1983, and August 8, 1983, ABC employees presented Whitfield with a Miles document explaining the possibility of AIDS transmission through plasma donation. The document noted that male homosexuals were among the groups at high risk for AIDS, and explained the urgency of ensuring that plasma donations were not made by members of high risk groups. The document concluded with the sentence "I certify that I am not a member of any at risk group described above," above a place for the donor's signature and the signature of a witness. On both occasions, Whitfield signed, indicating that he was not a homosexual or a member of any other high risk group.

---

10. Riojas' testimony on the state of knowledge "in 1982" is not substantial evidence on this

matter; as noted above, the inference is overwhelming that Riojas was mistaken as to dates.

The record shows only one instance on which Whitfield told anyone that he was a homosexual. Robert A. Griffin, M.D., testified that he treated Whitfield on September 27, 1983. Whitfield appeared to Dr. Griffin to be suffering from a form of pneumonia. In order to diagnose the condition with more specificity, Dr. Griffin wished to know if Whitfield was a member of a group at high risk for AIDS. If Whitfield was a member of such a group, it would be more likely that he was suffering from a particular form of pneumonia often associated with AIDS. Dr. Griffin, after explaining the reason for the question, asked Whitfield whether he was a homosexual. Whitfield responded that he was.

On considering the totality of this evidence in the light most favorable to the appellants, this court believes that no reasonable jury could have found in favor of the Joneses on the issue of causation. The evidence shows that Whitfield, when asked in connection with other plasma donations, repeatedly denied that he was a homosexual. Moreover, he twice signed such denials under circumstances which explained to him the gravity of the matter. The evidence thus points overwhelmingly towards an inference that, if he had been asked the same question on January 31 and February 3, 1983, he would have given the same answer.

Evidence of Whitfield's conversation with Dr. Griffin does not lessen the force of this conclusion. A patient giving information to his physician has a special incentive to be candid. McCormick, *Evidence* § 292 (3d ed. 1984). What Whitfield said

under those unique circumstances, when considered with all other evidence, cannot provide the basis for a reasonable conclusion that he would have spoken candidly about his sexual preference to ABC on the dates at issue. The jury could not reasonably find that the Joneses would have been spared their injuries if ABC had asked Whitfield, on January 31 and February 3, 1983, whether he was a homosexual. Accordingly, the district court was correct in entering judgment notwithstanding the verdict on this basis as well.[11]

## V.

The amount of knowledge about AIDS has grown considerably since the events which gave rise to this case. In such a situation, we too easily forget that not so long ago AIDS did not have a name, and the scientific community had little idea of how to control its spread. Yet hindsight and accusations must not be allowed to determine controversies such as this case involves. Randy Jones has died, through no fault of his own, but neither can we say that the fault lies with Miles Laboratories.

The order of the district court, granting defendant's motion for judgment notwithstanding the verdict, is hereby AFFIRMED.

---

11. The district court also indicated a third basis for the judgment notwithstanding the verdict: that there was insufficient evidence for the jury to find that Mr. Jones contracted AIDS from the lot of Koate made with Whitfield's plasma.

This court will not address that aspect of the district court's order.